GERBER, J.
 

 The defendant appeals his conviction for first-degree murder. He argues that the trial court erred by denying his motion to suppress his confession where two detectives allegedly: (1) failed to respect his assertion of his right to counsel; (2) failed to answer his question regarding the
 
 Miranda
 
 waiver form which they asked him to sign; and (3) repeatedly appealed to his religious feelings to coerce his confession. We conclude that these arguments are without merit and affirm.
 

 For better context, we shall provide a full recitation of the material portions of the interview. At the beginning of the interview, one of the detectives read the defendant his
 
 Miranda
 
 rights. The defendant stated that he understood those rights. The following dialogue then ensued:
 

 DETECTIVE # 1: Would you like to talk to me about what we’re here to talk about?
 

 DEFENDANT: My family attorney is in Fort Pierce ah, Florida.
 

 DETECTIVE # 1: Okay, do you wanna talk to me—
 

 DEFENDANT: They don’t want me to say nothing [until] like they get around,
 
 but I can tell you all what happened, you know, I don’t mind cause if you just tell the truth.
 

 DETECTIVE # 1: Okay, do you mind talking to us then?
 

 DEFENDANT: Yeah, I’ll talk to you all.
 

 DETECTIVE # 1: Okay, I need you to sign this saying that you are talking and we’re not coercing, meaning that we’re not forcing you to talk, we’re not trying to trick you to talk or do anything, saying that you will sign this, if you wanna stop talking at any time—
 

 
 *382
 
 DEFENDANT:
 
 This thing isn’t violating my rights or nothing
 
 ?
 

 DETECTIVE #1:
 
 No sir, I explained it to you
 
 and—
 

 DEFENDANT:
 
 Yes sir.
 

 (emphasis added).
 

 At that point, the first detective asked the defendant what happened. The defendant said he was called to come home because a man attacked his mother when she tried to break up a fight. The defendant got home and fought with the man, who then left. The man later came back with four or five other men. The defendant said that he and three of his friends walked up expecting a fistfight, but the man with whom he fought fired shots at them. The defendant said he never had a gun.
 

 The first detective told the defendant that several neighbors said they saw him shoot a gun. The first detective also showed the defendant the photo lineups which the neighbors signed to identify him as the person who shot the gun. The following dialogue then ensued:
 

 DEFENDANT: God as my witness, I didn’t kill that man.
 

 DETECTIVE # 1: The Lord as your witness, then we also have witnesses on this earth who said that you did it.
 

 DEFENDANT: But you know what that though—
 

 DETECTIVE # 1: Okay.
 

 DEFENDANT: The Lord’s powerful then [sic] anybody on this earth—
 

 DETECTIVE # 1: Um hum.
 

 DEFENDANT: I didn’t do it, I, I wasn’t the one who pulled the trigger and I know I wasn’t the one who pulled the trigger, I know this in my heart and the Lord know it, as long as He know it He gonna be up by me....
 

 Shortly thereafter, the first detective said he obtained an audiotape of the defendant apologizing to a woman who owned a house near where the shots were fired. The defendant responded that he was apologizing not because he fired the shots, but because one of the bullets could have hit the woman’s granddaughter. The following dialogue then ensued:
 

 DETECTIVE #2: ... [N]ow you gonna go to jail for murder and you can go to jail lying about it, if you want any chance at all, you got to tell the truth and it’s painted on your face, young man, it’s very clear that you’re not telling the truth.
 

 DETECTIVE # 1: Very clear.
 

 DETECTIVE # 2: Why don’t you tell the truth and make yourself feel better?
 

 DEFENDANT: Cause I’m scared.
 

 DETECTIVE # 2: Well—
 

 DEFENDANT: Tell the truth, sir?
 

 DETECTIVE #1: Teh the truth, that—
 

 DEFENDANT: (Indiscernible.)
 

 DETECTIVE # 1: The, the truth—
 

 DEFENDANT: (Indiscernible.)
 

 DETECTIVE # 1:
 
 The truth, the truth is, go ahead, the truth will set you free, go ahead?
 

 (emphasis added).
 

 At that point the defendant admitted that the man with whom he fought never had a gun. However, the defendant now said that
 
 the victim
 
 had a gun and fired it at him, so he pulled his gun and fired back four or five times.
 

 The first detective told the defendant that the neighbors only saw one gun, which the defendant used. The second detective then asked the defendant where the shell casings were from the victim’s gun. The defendant answered that he did not know. However, the defendant insist
 
 *383
 
 ed that the victim had a gun and shot it. The following dialogue then ensued:
 

 DETECTIVE # 2: Now um, look, I understand where you’re coming from, but for, in order for you to feel better about this and that’s the important thing here, to get it off your chest, that’s the really important thing,
 
 you talked about the power of God Almighty a little while
 
 ago—
 

 DEFENDANT: Um hum.
 

 DETECTIVE #2:
 
 If you want to accept His forgiveness, I think it’s very important you, you tell the complete truth and not just part of it.
 
 ... [D]id [the victim] have a gun?
 

 (emphasis added).
 

 At that point the defendant changed back to his original statement that the man with whom he fought had the gun, and the victim did not have the gun. The following dialogue then ensued:
 

 DETECTIVE # 1: So we got witnesses on both side of the streets that’s looking at you.... We’ve got evidence, physical evidence that supports their statements that only one gun was fired. Something ain’t adding up, man. Alright, your story, you the only human being ... saying that there was 2 guns involved in this.... [Y]ou’ve done the hardest thing ... you’ve already manned up to, to saying that you shot the gun, alright. Admitting the truth from here that’s the easy part, you’ve done the hard thing. Alright, trying to cover up one little thing is gonna, when you get on the jury stand, when the jury hear about this and it, it, it’s coming up this one thing it’s gonna make you look like a liar.
 

 [[Image here]]
 

 DETECTIVE # 2: That’s it, why so big right there, Jimmy, you’ve done the hard part, you’ve told, you’ve told it that, that you pulled that trigger and that’s very important. But what’s even more important is that you tell the whole truth, all the truth, cause then later on down the line you’ll be able to look everybody in the eye and say hey, I got here and told them when, when,
 
 when you find yourself in front of your Creator and you talked about God, you’ll be able to tell God yeah, I messed up, I did wrong, the detectives came and talked to me and I told them the whole truth and I accept what happened and God will welcome you into his arms, He will forgive you and admit you into Heaven.
 
 Think long time, you’re a young man, ya’ know what I’m saying?
 

 DEFENDANT: Yes sir.
 

 DETECTIVE # 2:
 
 You believe in God, I can see it, that’s painted on your face.
 
 Tell the whole truth, that’s what this is about, this is about confessing what you have done wrong.
 

 (emphasis added).
 

 At that point the defendant admitted that the man with whom he fought did not have a gun and that nobody else had a gun. But he insisted that he did not try to shoot the victim and that he was not looking in the victim’s direction when he shot the victim. The following dialogue then ensued:
 

 DETECTIVE #1: ... I believe the reason why you didn’t shoot [the man with whom you fought] is because you know that you all was boys, but this dude here [the victim] that’s standing to your left, standing here, you mad because ... you thought [the man] had done fought your momma, disrespected your momma and disrespected your ... friendship and this dude’s [the victim’s] standing there next to [the man], you point the gun and he turned his back, not even giving you the, the, the proper respect of you shooting him in his face, he turned his back on you and you just
 
 *384
 
 pull the gun to the left, this is what the witnesses said and you fired, pow, pow, pow, pow.
 

 [[Image here]]
 

 DETECTIVE # 2:
 
 And you know what, if when you get to Heaven, if you wanna look God in the face and say I told the truth, where’s it at, man?
 

 DETECTIVE # 1: Even with the jury, that goes a long way sometime when they come out and say that man showed remorse by telling us the truth, he’s not lying, he came out and he said he’s sorry, he told us exactly what happened. You tell the truth once you tell it a thousand times, but when you lie just like we’re sitting here this past thirty minutes and you had to tell 2 or 3 stories to cover up lies and I’ve come back with stuff that people have told us that, that make you a liar, look crazy, so tell the exact truth, that way when you get into court and you look that jury in them face and you tell them the truth again and say that I’m sorry and that goes a long way and even the, with the Judge that goes a long way.
 

 DEFENDANT: (Inaudible.)
 

 DETECTIVE # 1:
 
 It’s not promising you anything, but the truth goes a long way, it’s even in the Bible, it sets you free. It’s gonna set you free here.
 

 DETECTIVE # 2: You’re gonna, you’re gonna feel the relief.
 

 DETECTIVE #1: You gonna feel the relief.
 

 DETECTIVE # 2: Physically feel it.
 

 DETECTIVE # 1: And that goes a long ways when people say this guy told the truth, I believe he was remorseful, but if you keep lying and, and believe you me you’re gonna get through.
 

 DEFENDANT: I just told the truth about everything.
 

 DETECTIVE # 1: Tell the whole, you told 90 percent.... I believe you told 90 percent, but there’s a little, a little bit difference because there was 6 or 7 people that lived on [a] different part of that block that came in and told the exact same thing, they even said what these guys said and these guys who’s angry, who’s scared that you done shot one of their friends, they came in, talked to me at different times and told me the exact same story, the exact same story. So you got somebody that was involved in this thing telling me the same story and you got 6 people that wasn’t even involved in it told me the same story and you that’s involved with it telling me 90 percent of the same story, but there’s one little different thing, so you need to come clean.
 

 DEFENDANT: The first shot me and him were looking right in each other eye.
 

 (emphasis added).
 

 The state charged the defendant with first-degree murder. As mentioned above, the defendant moved to suppress his confession on the grounds that the detectives allegedly: (1) failed to respect his assertion of his right to counsel when he referred to his family attorney in Fort Pierce; (2) failed to answer his question, “This thing isn’t violating my rights or nothing?” when referring to the
 
 Miranda
 
 waiver form which they asked him to sign; and (3) repeatedly appealed to his religious feelings to coerce his confession.
 

 The trial court entered a written order denying the motion. The court concluded that the defendant understood his
 
 Miranda
 
 rights and “freely, voluntarily, and knowing[ly] waived those rights and agreed to speak to the detectives.” The court further concluded that “the defendant’s statement was not the product of coercion.” The court reasoned:
 

 
 *385
 
 A detective’s use of religion to encourage a person to tell the truth does not make a defendant’s statements coerced.
 
 See Walker v. State,
 
 707 So.2d 300, 311 (Fla.1997) (the court found no coercion by the officers when the defendant made incriminating statements after he was told that God would not believe his abduction story);
 
 see also Smithers v. State,
 
 826 So.2d 916, 925 (Fla.2002) (the court found no coercion in the officer’s tactic of telling the defendant that, if he was a Christian, the right thing to do would be to tell the truth). A detective’s use of the statement “the truth will set you free” is not a coercive statement.
 
 See McNamee v. State,
 
 906 So.2d 1171, 1175 (Fla. 4th DCA 2005) (the court found that an officer’s reading of a verse in the Bible and stating that “the truth will set you free” did not amount to coercion).
 

 The case then proceeded to trial. The jury found the defendant guilty of first-degree murder. The court sentenced him to life in prison.
 

 This appeal followed. The defendant contends that the trial court erred by rejecting the three arguments mentioned above. We employ a two-step standard of review.
 
 Bevel v. State,
 
 983 So.2d 505, 515 (Fla.2008). We must determine whether competent, substantial evidence supports the trial court’s findings of fact and whether the trial court reached the correct legal conclusion that the defendant knowingly, intelligently, and voluntarily waived his
 
 Miranda
 
 rights.
 
 Id,,
 
 (citations and internal notations omitted). In making these determinations, we must look to the totality of the circumstances.
 
 Id.
 
 at 516 (citation and emphasis omitted).
 

 Here, looking at the totality of the circumstances, we conclude that competent, substantial evidence supports the trial court’s findings of fact, and that the trial court reached the correct legal conclusion that the defendant knowingly, intelligently, and voluntarily waived his
 
 Miranda
 
 rights.
 

 First, the defendant did not assert his right to counsel. He initially stated that he had a “family attorney” in Fort Pierce and that “they” (his family or his attorney) “don’t want me to say nothing [until] like they get around.” However, in the next breath, the defendant told the detectives “but I can tell you all what happened, you know, I don’t mind cause if you just tell the truth.” Thus, the defendant waived his right to counsel.
 

 This case is similar to
 
 Alvarez v. State,
 
 890 So.2d 389 (Fla. 1st DCA 2004). There, the defendant waived his
 
 Miranda
 
 rights and began speaking to detectives. At some point the defendant stated, “From here on, I’m not supposed to talk about it. Mr. Stanfield told me not to talk about the rest of this.”
 
 Id.
 
 at 393. One of the detectives then asked, “Now are you saying you don’t want to tell me what happened?”
 
 Id.
 
 The defendant responded, “No, no, no. I want to tell you what happened.”
 
 Id.
 
 The first district concluded that the defendant’s statements did not constitute an invocation of his right to remain silent or his right to counsel.
 
 Id.
 
 at 394-95. The case here is even stronger than
 
 Alvarez
 
 because here, the defendant on his own volunteered that he “can tell you all what happened, you know, I don’t mind cause if you just tell the truth.”
 

 The defendant now alternatively argues in this appeal that his assertion was at least ambiguous, and so the detectives, pursuant to
 
 Alvarez v. State,
 
 15 So.3d 738 (Fla. 4th DCA 2009), had to clarify his assertion before proceeding with the interview.
 
 See id.
 
 at 745 (“[A]n ambiguous waiver must be clarified before initial questioning.”) (citation omitted). However, this alternative argument is unpersua
 
 *386
 
 sive. The defendant unambiguously waived his right to counsel. As such, the detectives had no duty to clarify the defendant’s waiver before proceeding with the interview. Even so, the detectives clarified the defendant’s waiver by asking, “Okay, do you mind talking to us then?” The defendant responded without hesitation, “Yeah, I’ll talk to you all.”
 

 Second, as to the defendant’s question “This thing isn’t violating my rights or nothing?”, referring to the
 
 Miranda
 
 waiver form which the detectives asked him to sign, the detectives responded with a simple and straightforward answer — “No sir, I explained it to you.” Thus, the detectives complied with the case upon which the defendant relies,
 
 Almeida v. State,
 
 737 So.2d 520 (Fla.1999). There, our supreme court held that “if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer.”
 
 Id.
 
 at 525. We conclude that the detectives here gave a simple and straightforward answer, which also was accurate.
 

 Third, we agree with the trial court’s reasoning that the detectives’ use of religion to encourage the defendant to tell the truth did not make the defendant’s statements coerced. The trial court’s parenthetical descriptions of
 
 Walker, Smithers,
 
 and
 
 McNamee
 
 are accurate. In each of those cases, the supreme court and this court considered various religious references in the context of the totality of the circumstances and found that the confessions in those cases were voluntarily given and not coerced. Similarly in this case, the detectives merely played off the defendant’s initial religious expressions of “God as my witness” and “The Lord’s more powerful than anybody on this earth” to encourage him to tell the truth. “Encouraging or requesting a person to tell the truth does not result in an involuntary confession.”
 
 Garcia v. State,
 
 60 So.3d 1097, 1099 (Fla. 4th DCA 2011) (internal brackets and quotations omitted).
 

 Moreover, the detectives’ use of religion was not the only technique which they used to encourage the defendant to tell the truth. The detectives equally disclosed the evidence in the case to the defendant in an effort to cause him to realize that his account of the incident was not credible. The detectives confronted the defendant with the neighbors’ statements identifying him as the shooter and as the only person with a gun, the audiotape of him apologizing to the woman who owned the house near where the shots were fired, and the fact that there were no shell casings from a second gun. The detectives then told the defendant that, based on this evidence, the jury would think he was a liar. Given the detectives’ statements, it is reasonable to conclude that the defendant realized his story was not credible and voluntarily confessed.
 

 The defendant nevertheless argues that the detectives’ use of religion here was more akin to law enforcement’s use of the “Christian burial technique” during interrogations. Under that technique, law enforcement tells a suspect “of the need to recover the body for purposes of a Christian burial” to cause the suspect to make an incriminating statement.
 
 Roman v. State,
 
 475 So.2d 1228, 1280 (Fla.1985). Our supreme court has referred to the use of this technique as “unquestionably a blatantly coercive and deceptive ploy.”
 
 Id.
 
 at 1232. However, the supreme court has not found that the use of the technique automatically makes the statement inadmissible. Rather, the court has found that the use of the technique is merely a factor among the totality of the circumstances to be considered.
 
 See id.
 
 at 1232-33 (“[A]l-
 
 *387
 
 though we consider [the technique] as a factor among the totality of circumstances surrounding the giving of this statement ... we find that the deception was insufficient to make an otherwise voluntary statement inadmissible.”). Similarly here, we conclude that the detectives’ use of religion was insufficient to make the defendant’s voluntary statement inadmissible.
 

 The defendant also argues that he was not mentally competent to make an understanding waiver of his rights, and that the trial court erred by overruling his objection to the state’s use of a PowerPoint presentation during closing argument. We affirm as to those arguments without further comment.
 

 Affirmed.
 

 [1]
 

 STEVENSON and GROSS, JJ., concur.
 

 . We commend the trial court for conducting a thorough comparison of the interview's audio recording against the transcript to correct several inaccuracies in the transcript.